Leſſee of Jacob Welker *v.* Priscilla Coulter.

1799.

THIS was an Ejectment for a meſſuage and 300 acres of land, in *Franklin* townſhip, brought to *March* term, 1798.

The plaintiff ſhewed a warrant, dated 8th *January*, 1773, for 100 acres of land, on a branch of *Turtle-creek*, on the north ſide of general *Forbes's* old road, and on the ſouth ſide of the path leading to *Plumb-creek*; including a white-oak, marked *J. W.* ſtanding on the weſt ſide of the bottom of ſaid branch; in *Fort-Pitt* townſhip, in the county of *Westmoreland.* He then ſhewed a ſurvey of 255 acres and the allowance, made, on this warrant, 25th *June*, 1773, by *Eli Coulter*, deputy of *Robert M'Crea*, who was deputy ſurveyor of the diſtrict in which the land is.

The defendant, (who is the widow of *Eli Coulter)* claiming under the ſame title produced a conveyance, dated 26th *July*, 1787, for the conſideration of 20*l.* by *Jacob Welker* to *Eli Coulter*, of this warrant and all the land ſurveyed or to be ſurveyed on it; and a patent to *Eli Coulter*, on the ſurvey made by him, dated 31ſt *March*, 1789.

The plaintiff's counſel then propoſed to prove, that the conveyance from *Welker* was fraudulently obtained. And evidence was given, that, in *April*, 1787, when a deputy ſurveyor came to make a ſurvey of this land for *Welker*, on his warrant, *E. Coulter* repreſented, that he had a ſurvey of it made on an early location, and that perhaps then there was a patent; that, however, as he could lay *Welker's* warrant on adjoining land, which would be uſeful to him, he would buy his warrant, and put an end to diſpute; that he did then buy it, for 20*l.* and had a ſurvey of 40 acres adjoining made on it; and that he afterwards returned his former ſurvey of 255 acres on *Welker's* warrant, and took out a new warrant for the 40 acres.

It was then proved for the defendant, that *E. Coulter* had an old improvement and ſettlement, which had been begun in 1772; that a cabbin was then built, and three acres of land deadened. In 1773 *Coulter* and another

man with him worked occafionally on the land, cleared out the three deadened acres, fowed that with turnip feed, and, in the fall, with rye. In 1774, the inhabitants of that part of the country were driven off by the *Indian* war. In the fpring of 1775, *Coulter* put a tenant on this land, who refided on it, cleared out the old ground and 5 acres more, planted 4 acres in corn, and that and all the reft in fall grain. In 1776, another field of 4 acres was cleared by *Coulter*. In 1777, *Coulter's* tenant was driven off by the *Indian* war; and that part of the country being generally deferted, till after the war, nothing more was added to the improvement, till about nine or ten years ago, when *Coulter* put a tenant on it, who yet remains. There are now 30 acres of up-land, and 10 acres of meadow, cleared, fenced, and cultivated.

*Coulter* had no tenant living on the land in 1787, when *Welker* came to furvey; and there was contradictory teftimony as to the extent of his improvement in 1773, when *Welker* firft vifited the land, found *Coulter* working on it, and told him he had a warrant for it.

There was teftimony alfo, that, at the time of making the purchafe of *Welker's* warrant, *Coulter* reprefented his title as refting on his fettlement; but faid alfo, fhould that fail, he had, or he could have, an old location; the witnefs who proved this did not hear him fpeak of a patent, but had heard him fay, before he faw *Welker* or knew any thing of his claim, that he had a location in the name of *James M'Clure. Coulter's* furvey was made in 1772. He died feven or eight years before this ejectment was brought.

The defcription in the warrant did not precifely and exclufively defignate this land, and there was no evidence of a tree marked *J. W.* on it.

*Brackenridge* and *Morrow*, for the plaintiff, ftated, that the purchafe being founded on a grofs mifreprefen- tation, a *fuggeftio falfi*, by *Coulter*, in faying he had a title, when it is evident that he had none, is fraudulent, and therefore void: and the title of *Welker* ftands as if he had made no conveyance. 1 *Wils.* 239. 1 *Fonbl.* 113, 128.

No fubfequent tranfactions will confirm a fraudulent bargain, nor length of time bar a claim of relief againft it. Equity relieves againft a miftake or mifapprehen- 1 *Wils.* 320. 1 *Fonbl.* 322, 106, 60. 1 *Wils.* 295.

fion of title, againft undue advantage taken of neceffity, or where weaknefs of underftanding founds a prefumption of undue influence.

*Young* and *M'Keehan*, for the defendant. The act of affembly bars any action for land, on a claim founded on a warrant without a furvey, unlefs the party has been in poffeffion within feven years. It is in proof, that *Welker* never had a furvey nor poffeffion. Laches are not indulged. *Welker* has lien by an unreafonable time, not only during the life of *Coulter*, but fince his death ; and there is reafon to fufpect, that he is not the perfon really interefted in this fuit, and that others have ftirred it up. If *E. Coulter* had been now alive, he could have explained and eftablifhed the reprefentation of his claim, which he made to *Welker :* and we are not to believe, that, before his purchafe of *Welker's* warrant, *Coulter* had no location for this land, becaufe he afterwards returned his furvey on this warrant. He had paid a great price for the warrant, and was right in making the beft of it. It has been a very general practice in this country, for perfons who had old locations, in order to evade the payment of intereft on the purchafe money, to take out new warrants for their land. When the ftate had given the *Virginia* claimants their lands fo cheap, it was thought by the *Pennfylvania* fettlers, that the cheapeft method to them was fair.

PRESIDENT. It is not neceffary to embarrafs the deliberations on the facts with any confideration of the limitation of this action, as, it being clear that the plaintiff never was in poffeffion, this is a mere queftion of law.

If *E. Coulter* obtained the conveyance from *Welker* by a fair contract, or, though the contract was not fair, if, at the time of the purchafe, he had a better title than *Welker*, there muft be a verdict for the defendant.

It is generally underftood, that many poffeffed of old locations have abandoned them, and taken out patents on new warrants. How far this is a fair practice, as refpecting the ftate, is not material, in this action, to enquire. You have evidence, that before *Coulter* knew of *Welker's* claim, he faid, that he had a location in the name of one *M'Clure*. This may have been true, and on this location he might have intended to return his

survey of this land. But after the purchase of *Welker's* warrant, for which 5*l.* sterling must have been paid to the Land-Office in 1773, he might have thought it more advantageous to abandon this location, or apply it elsewhere, and return his survey on *Welker's* warrant. If such be the truth, the transaction is fair, and *Coulter's* title good.

But if *E. Coulter* represented to *Welker*, that he had an old title, when, in fact, he had none; and if this was the only or the principal motive which induced *Welker* to sell his title; if, without this motive, *Welker* would not have transferred his claim; this is such a fraud as renders the purchase void, and all the title, which *Welker* then had, yet remains in him.

But as fraud in *Coulter* cannot make *Welker's* title better than it was, and every plaintiff in ejectment must recover on the strength of his own title, even though this purchase were fraudulent, if *Coulter* had then a better title by a prior settlement (or location and survey) his fraudulent purchase of the warrant will not destroy his prior title by settlement.

This warrant is not so specially attached to this land, by its description, as clearly to point out this as the land claimed by it, and exclude any other title from it. Before a survey made on this warrant, it does not exclusively affect this land. *Coulter* returned his survey on *Welker's* warrant, in consequence of his purchase of this warrant: and, if the purchase be void, *Coulter's* survey must be detached from *Welker's* warrant. *Welker* never made a survey on this warrant; and he made no attempt to survey, till in 1787; and before that, and certainly in 1775, an actual settlement was made by *E. Coulter*.

The jury returned to give a verdict, but the plaintiff being called, appeared not: and there was judgment of nonsuit.